IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Alvon Bennett )
    Plaintiff, )
   )
v. ) 1:20cv56 (AJT/JFA)
   )
Dr. James Cane, et al., )
    Defendants. )

## MEMORANDUM OPINION

Alvon Bennett, a former inmate at Henrico County Jail, has sued two medical providers at the jail, Dr. James Cane and Nurse Practitioner (NP) Inna Tarasova, claiming that they provided constitutionally deficient medical care. See 42 U.S.C. § 1983. Defendants each move for summary judgment. [Doc. Nos. 22, 28]. Bennett has received the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and has filed nothing in response. [Id.]. Because the undisputed evidence demonstrates that defendants are entitled to judgment as a matter of law, the Court will grant defendants' motions for summary judgment.

### I. Background

*A) The Amended Complaint*

Bennett filed an unverified, amended complaint claiming that Dr. Cane and NP Tarasova acted with deliberate indifference to two ongoing needs for medical attention: (1) wrist pain; and (2) a lipoma on his left hip. Bennett begins by alleging that he arrived at Henrico County Jail on July 5, 2019, and immediately reported that he was suffering "intense pain" from the manner in which he had been placed in handcuffs during his arrest. [Doc. No. 9, Amended Compl.]. According to Bennett, the jail's intake nurse ignored his affliction. Then, Bennett alleges, he placed a sick-call request "[a]fter a night of intense pain," but he was not seen for another four

weeks. [Id.]. When he finally saw Dr. Cane, Bennett continues, the doctor prescribed vitamin B-1 to treat what Bennett self-describes as "nerve damage." [Id.]. Soon after, on August 7, Bennett saw NP Tarasova because he was experiencing a burning sensation in his left arm and numbness in his left hand. Bennett alleges that Tarasova did not treat him, telling him instead that " it will stop hurting in a couple of days." [Id.]. Bennett further alleges that a month later, on September 2, he saw Dr. Cane, who again prescribed vitamin B-1, which, Bennett adds, did not alleviate his pain.

Concerning the lipoma, Bennett submitted a document from the Mayo Clinic that describes the condition as a "slow-growing, fatty lump that's most often situated between your skin and the underlying muscle layer." [Doc. No. 12]. The Mayo Clinic also states that a lipoma "usually is harmless" and "[t]reatment generally isn't necessary, but if the lipoma bothers you, is painful or is growing, you may want to have it removed." [Id.]. Bennett alleges that the lipoma has been bothering him since September 16, 2019, and it has grown to about 20 centimeters—four times the size of a typical lipoma. [Id.]. Bennett further alleges that Dr. Cane informed him in January 2020 that surgery had not been recommended, which conflicted with the November 2019 recommendation of another physician, Dr. Clifford L. Smith. Bennett adds that Dr. Cane also told him that NP Tarasova "took [him] off the list because it cost the jail too much money and was not life threatening." [Doc. No. 9, Amended Compl.].

*B) Summary Judgment Record*

Defendants have submitted uncontested evidence, including sworn declarations and medical records, in support of their motions for summary judgment. [Doc. Nos. 23, 29]. That evidence establishes that Bennett was arrested on July 5, 2019, in Henrico, Virginia. [Doc. No. 23, Tarasova Ex. A-1, at pp. 86–87]. Before Bennett was taken to Henrico County Jail, the

arresting officers brought him to Henrico Doctor's Hospital to address injuries to his left arm and left eye that he received during the arrest. [Id. at pp. 87, 101]. The hospital records note that Bennett reported pain in his left arm, mostly around the elbow, but an examination determined that his left elbow and upper arm had "full range of motion with no swelling, ecchymosis[1] or tenderness" and "[n]o deformities." [Id. at pp. 101, 103]. Bennett was encouraged to take Motrin or Tylenol as needed for pain; discharged from the hospital; and taken to Henrico County Jail. [Id. at pp. 103–04 & Tarasova Decl. ¶ 3].

In their declarations Dr. Cane and NP Tarasova attest to the care they provided to Bennett during the period at issue in the complaint. Tarasova attests that she does not handle medical intaking for new inmates or intaking sick requests for current inmates. [Doc. No. 23, Tarasova Decl. ¶¶ 3–4]. Dr. Cane similarly attests that he is not responsible for processing inmate sick requests. [Doc. No. 29, Cane Decl. ¶ 2]. Rather, once it is determined that an inmate should see a medical provider, the inmate will be referred to Dr. Cane or NP Tarasova. [Id.].

Concerning Bennett's left wrist and arm pain, Bennett first submitted a sick-call request on July 12, 2019, complaining about pain in his left arm. [Doc. No. 23, Tarasova Ex. A-1, at p. 168]. He was scheduled to see a provider at the jail on July 15, 2019, but he refused a physical examination. [Id. at p. 95]. He submitted another sick-call request on July 21, 2019, complaining about wrist pain. [Id. at p. 169]. Tarasova saw Bennett at the clinic four days later, on July 25, and conducted a physical examination. [Id. & Tarasova Decl. ¶ 7]. She determined that his left arm had normal range of motion and color and that he did not have any fractures or broken bones. [Tarasova Decl. ¶ 7]. She advised Bennett to perform range-of-motion exercises and to

---

[1] Ecchymosis is "the medical term for a type of bruise . . . when blood leaks out of your blood vessels into the top layer of your skin." See https://www.webmd.com/skin-problems-and-treatments/ecchymosis (last reviewed Jan. 18, 2022).

follow up in ninety days. [Id.]. She attests that she "never told Bennet that his wrist would stop hurting in a couple of days." [Id.].

The following week, on August 2, 2019, Bennett submitted another sick-call request, again complaining about pain in his wrist and arm and also asking for an x-ray. [Tarasova Ex. A-1, at p. 170]. Ten days later, on August 12, Bennett's wrist was x-rayed. [Id. at p. 94]. The x-ray findings were normal, and ibuprofen was prescribed. [Doc. No. 29, Cane Aff. ¶ 6]. Then, on January 10, 2020, Dr. Cane performed a physical exam after Bennett continued to complain of left hand and arm pain. [Id. ¶ 11]. Dr. Cane referred Bennet for acupuncture. [Id.]. Bennett refused to receive that recommended care. [Doc. No. 23, Tarasova Ex. A-1, at pp. 98, 100].

As for Bennett's lipoma, which Dr. Cane describes as a "large mass on [the] left hip area," Bennett submitted a sick-call request on September 17, 2019, reporting that the lipoma was swollen and painful. [Id. at p. 174; Doc. No. 29-4, 1/21/20 Blue Note Resp.]. Dr. Cane examined Bennett on October 16, 2019, and referred him to a general surgeon to determine if the lipoma needed to be surgically removed. [Doc. No. 29, Cane Decl. ¶ 7]. Bennett was examined by Dr. Clifford Smith at Henrico Doctor's Hospital on November 7, 2019. [Id. ¶ 8]. Dr. Smith ordered a CT scan and a biopsy to determine whether the lipoma was cancerous. [Id.]. The test results were normal, meaning that the lipoma was benign. [Id. ¶ 9]. Dr. Smith said he would "see Bennett back as needed" and did not refer Bennett for surgery [Id.].

Dr. Cane notified Bennett that neither he nor Dr. Smith recommended surgery to remove the lipoma. [Doc. No. 29-4, 1/21/20 Blue Note Resp.]. The lipoma "is not an emergency," Dr. Cane added, informing Bennett that surgery "can be pursued by you after your release from this facility, especially since you have been dealing with this since as far back as 2016 . . . and have chosen not to get it taken care of on the outside." [Id.]. Bennett wrote back that he never got the

4

surgery because he could not afford to pay for it and, moreover, he has not stayed out of jail long enough to take care of it. [Doc. No. 23, Tarasova Ex. A-1, at p. 194]. Dr. Cane further attests that, as a matter of policy, inmates generally are recommended to have surgery only if a condition "is life threatening, serious or an emergency situation." [Doc. No. 29, Cane Decl. ¶ 14]. Additionally, because Bennett had never been scheduled for surgery at the jail, NP Tarasova avers that she could not have removed him from the surgery list. [Doc. No. 23, Tarasova Decl. ¶ 12]. Instead, Bennett was given ibuprofen and Tylenol for pain management throughout his incarceration. [Doc. No. 23, Tarasova Ex. A-1, at pp. 12–85]. Neither defendant has explained two comments Dr. Cane made in Bennett's medical record, however, suggesting that surgery may have been considered: (1) a comment on December 10, 2019, stating "Referral/APPT WITH . . . General Surgery for removal of progressively painful 10 cm lipoma in left hip area. CT scan confirmed that it is not cancer"; and (2) a comment on January 9, 2019, stating "after midnight on 1/14 for surgery on 1/15." [Doc. No. 23, Tarasova Ex. A-1 at p. 9].

## II. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Hupp v. Cook, 931 F.3d 307, 317 (4th Cir. 2019) (internal quotation marks and citations omitted). In evaluating a summary judgment motion, the Court views the evidence, and draws all inferences, in the light most favorable to the nonmoving party. See E.W. by T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018). Still, because Bennett has only submitted an unverified complaint and no response opposing summary judgment, the Court will not consider Bennett's version of the facts

5

as evidence to determine whether disputes of material fact preclude summary judgment. See Fed. R. Civ. P. 56(e); United States ex rel. Doe v. Heart Solution, PC, 923 F.3d 308, 315–16 (3d Cir. 2019); Turner v. Human Genome Scis., Inc., 292 F. Supp. 2d 738, 743 (D. Md. 2003).

### III. Analysis

Defendants argue that summary judgment in their favor is warranted on Bennett's claims that they acted with deliberate indifference to his serious medical needs.[2] Claims for constitutionally inadequate medical care in a correctional facility have an objective and a subjective component. Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021). To satisfy the objective component, a plaintiff-inmate must prove that he has a serious medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks and citation omitted). To meet the subjective component, the inmate-plaintiff must prove that the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." Id. at 357 (4th Cir. 2019) (internal quotation marks, citation, and brackets omitted).

Defendants first argue that Bennett has not demonstrated that he suffered from any objectively serious medical condition. Concerning Bennett's left arm/wrist, they point to evidence showing that he had been medically cleared by a hospital before arriving at Henrico County Jail and that he never had any broken or fractured bones. For Bennett's lipoma, defendants urge that the lipoma—which Bennett had since 2016—was benign and did not require surgery to remove it.

---

[2] Although filed separately, defendants' motions for summary judgment are nearly identical, so the Court will address them together.

The Court need not address whether Bennett suffered from an objectively serious medical condition because the Court agrees with defendants' second argument that, even if the objective component could be satisfied, the medical record demonstrates that neither defendant acted with deliberate indifference to Bennett's arm/wrist pain or his lipoma.

First, to the extent that Bennett seeks to impose liability based on delayed care, the record forecloses that claim. A "significant delay in the treatment of a serious medical condition" may, indeed, constitute deliberate indifference "if the delay results in some substantial harm to the patient." See Webb v. Hamidullah, 281 F. App'x 159, 166 & n.13 (4th Cir. 2008) (collecting cases). But the evidence submitted demonstrates that neither defendant is responsible for scheduling inmates to see a medical provider when a sick-call request is placed. Thus, Dr. Cane and NP Tarasova could not have acted with deliberate indifference to Bennett's requests for care and are entitled to summary judgment for a claim based on delayed care.

Second, contrary to Bennett's allegations in the complaint, the undisputed record does not establish that when he saw NP Tarasova on August 7, 2019, and reported that he was experiencing burning sensation in his left arm and numbness in his left hand, she merely "told [him] that [he's] okay and it will stop hurting in a couple of days." [Doc. No. 9, Amended Compl.]. Rather, the undisputed record shows that Tarasova examined Bennett on July 25; concluded that his left arm had normal range of motion, normal color, and no fractures or broken bones; and recommended that he perform range of motion exercises. When Bennett requested an x-ray a week later, he quickly received one. The x-ray findings were normal, and Bennett was prescribed ibuprofen. Because no reasonable juror could conclude on this undisputed record that Tarasova ignored Bennett's complaints about his left arm and wrist, summary judgment in her favor is warranted.

Nor does the undisputed record demonstrate, as alleged in the complaint, that Dr. Cane only provided vitamin B-1 to manage the pain Bennett experienced in his left arm and wrist. Deliberate indifference is found when a doctor's treatment is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hixson v. Moran, 1 F.4th 297, 303 (4th Cir. 2021) (internal citation omitted). Perhaps treating an inmate's pain solely with vitamins could meet that standard. But the Court need not so decide because the medical record contradicts Bennett's unsupported allegation. The record actually shows that Bennett received ibuprofen for pain, and that Dr. Cane provided a referral for acupuncture—a treatment option Bennett refused. Bennett has not stated what other treatment he desired. No matter, though, because a "disagreement between an inmate and a physician over the inmate's proper medical care . . . fall[s] short of showing deliberate indifference." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (internal quotation marks, alterations, and citation omitted). Therefore, summary judgment is warranted in Dr. Cane's favor with respect to Bennett's claim about pain management.

Lastly, the record evidence fails to establish that either defendant acted with deliberate indifference to Bennett's lipoma. Again, there is no evidence to support Bennett's allegation that Dr. Cane and NP Tarasova ignored the recommendation from Dr. Smith (the physician at Henrico Doctor's Hospital) that the lipoma be surgically removed, and that they removed him from the surgery list. Instead, the evidence shows that, after reviewing the CT scan and biopsy Dr. Smith ordered, he told Dr. Cane that he would examine Bennett again "if any new problems arose." [Doc. No. 29-4, 1/21/20 Blue Note Resp.]. It's true, though, that two notations in Bennett's medical record suggest that surgery was at least considered. But considering one medical treatment and then opting for another does not amount to deliberate indifference.

See Starling v. United States, 664 F. Supp. 2d 558, 570 (D. S.C. 2009) (concluding that "Plaintiff's complaint of not receiving surgery provides no basis for a deliberate indifference claim" when "[s]urgery was recommended 'as a *possible* treatment option but it would be a fairly large undertaking and somewhat unpredictable in its results and should only be considered if all other measures fail'"). Defendants are therefore entitled to judgment as a matter of law on Bennett's deliberate indifference claim about his lipoma. See Stevens v. Jividen, No. 1:18cv140, 2020 WL 4496749, at *14 (N.D. W. Va. July 6, 2020), R. & R. adopted, No. 1:18cv140, 2020 WL 4495476 (N. D. W. Va. Aug. 4, 2020) (concluding that "[a]n inmate cannot establish a claim of deliberate indifference when the relevant medical records demonstrate that the inmate received continuous and reasonable care for his medical conditions," including being "repeatedly scheduled for medical visits in response to his requests, [being] seen by providers, and [being] provided diagnostic testing").

## IV. Conclusion

For the reasons outlined above, and through an Order that will issue alongside this Memorandum Opinion, the defendants' motions for summary judgment [Doc. Nos. 22, 28] will be granted.

Entered this 2nd day of Feb. 2022.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge